**SO ORDERED.**

**SIGNED this 9th day of December, 2016.**



_____
Robert E. Nugent
United States Bankruptcy Judge
_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

VICKIE RIOS

Case No. 13-11076
Chapter 13

**Debtor.**

## MEMORANDUM OPINION

While a chapter 13 debtor can voluntarily dismiss her case at any time and for any reason under 11 U.S.C. § 1307(b), the bankruptcy court retains the discretion to condition that dismissal in several ways. If there is cause, the Court may except debts that are dischargeable in the current case from discharge in a future case.[1] And, if the debtor has violated a court order or engaged in certain other misconduct, the

---

[1] *See* 11 U.S.C. § 349(a).

1

Court can bar the debtor from refiling for a period of 180 days.[2] Courts can only exercise these powers after notice and hearing and receiving evidence of cause or of other misconduct.[3]

Vickie Rios confirmed a chapter 13 plan in this case in 2013. She has filed five cases in this District in the past 14 years—making her a particularly experienced debtor. Although her confirmation order forbade the disposition of any assets without the court's permission, Ms. Rios sought, obtained, and spent a $25,000 employment law settlement she received from her former employer Westar Energy. She advised the trustee she'd received the settlement in January of 2016, but did not request court leave to use it. After nearly three months of informal discussions between the trustee and debtor's counsel, the trustee filed a motion to turn over the settlement in April; by that time, nearly all of the money was gone. Unwilling or unable to repay the estate, Ms. Rios invoked her right to dismiss her case by filing a motion under § 1307(b). The trustee objects and requests that the Court condition that dismissal as § 349(a) allows, by barring the debts she listed in this case from being discharged in any future case she might file. Ms. Rios plans to file another case to deal with income taxes she has accrued during the present case and to discharge her other debts. As detailed below, there is ample cause for me to sustain the trustee's objection and

---

[2] 11 U.S.C. § 109(g)(1).
[3] *See In re Norton,* 319 B.R. 671 (Bankr. D. Utah 2005) (discussing due process considerations of § 349(a) dismissal with prejudice to debtor's ability to discharge debts in future bankruptcy case).

**2**

condition the dismissal by excepting from discharge in future cases Ms. Rios's scheduled debts in this case.[4]

Facts

Since 2002, Ms. Rios has filed five bankruptcy cases in this District.[5] She received a chapter 7 discharge in 2002, completed the plan in her 2005 chapter 13 case in 2009, and got another chapter 7 discharge in December of 2011. Nine months later, she filed another chapter 13 in which she successfully confirmed a plan, but, on May 2, 2013, she voluntarily dismissed that case under § 1307(b), representing that she "is no longer able to comply with her Chapter 13 plan."[6] She filed this case four days later on May 6, 2013 and confirmed another plan that July. Now she again seeks to voluntarily unconditionally dismiss her case under § 1307(b).[7] She offered no explanation at trial of how circumstances had changed in the four days between her prior dismissal and the filing of this case so that she would be able to fund her new chapter 13 plan.

Because she received a chapter 7 discharge in her 2011 case, Ms. Rios was ineligible for a discharge in this case filed just two years later.[8] Ms. Rios accumulated partially unpaid federal and state income tax obligations from 2009 through 2012 (during the pendency of two cases). She has paid no income tax for tax years 2013,

---

[4] The chapter 13 trustee Carl B. Davis appears by his attorney Karin Amyx. The debtor, Vickie Rios appeared in person and by her attorney David J. Lund.
[5] *See* Case Nos. 02-13208-7; 05-15963-13; 11-12536-7; 12-12466-13; and the current chapter 13 case: No. 13-11076.
[6] No. 12-12466, Doc. 21.
[7] Trial Ex. C, D; Doc. 41 (motion to voluntarily dismiss),
[8] 11 U.S.C. § 1328(f)(1).

3

2014, and 2015 (during the pendency of her last two cases).[9] She will owe yet more taxes for 2016 as a result of receiving a $25,000 settlement from her former employer that is nearly the equivalent of a year's pay. Westar terminated Ms. Rios in July of 2015, during the pendency of this case, but her union successfully pursued a grievance based on Westar's alleged violation of the Family Medical Leave Act. As a result, she received $2,000 designated as wages and $23,000 designated as damages.[10] Taxes and benefits were withheld from the wages portion, but not from the damages. Ms. Rios falsely represented in the settlement agreement that she had no pending bankruptcy case and that no trustee had a claim on the settlement funds.[11] When she received this money in January of 2016, she had been unemployed for several months. She got a new job in February at a lesser rate of pay than her Westar job, and remains employed as of the date of trial.

Ms. Rios' plan, confirmed on July 25, 2013, required her to make monthly plan payments of $260.[12] While employed at Westar, Ms. Rios made her plan payments through an employer pay order. After Westar terminated her, Ms. Rios missed some of her plan payments and after receipt of the settlement in January 2016, Ms. Rios made only two plan payments in 2016, one for $1,000 in January and her last

---

[9] Trial Ex. N, IRS proof of claim in No. 12-12466 in amount of $8,376 for unpaid income taxes for 2009-2011; Trial Ex. Q and R, IRS proof of claim in No. 13-11076 for unpaid income tax for 2009-2012. Trial Ex. O and P, Kansas Department of Revenue proofs of claim.
[10] Trial Ex. F.
[11] *Id.* at ¶ 13.
[12] Trial Ex. D.

4

payment of $260 in April. When she filed this motion to dismiss, she owed a small delinquency.[13]

Ms. Rios testified that after she received her settlement money, she contacted the trustee's office directly. In argument, her counsel noted that he had discussed the settlement with the trustee but that no agreement concerning its use was reached. Ms. Rios testified that she needed the money to pay living expenses and to catch up on bills that remained unpaid because she had been out of work for several months. Ms. Rios bought a car for about $3,900, replacing her 16 year old vehicle. Her bank statements reflect that she indeed spent some of the money paying living expenses like car insurance, water and utility bills, pet supplies and veterinary expenses, and cell phone service, but she also spent the money on clothing, iTunes, Dish network, and numerous daily fast food purchases. As the trustee's summary of Ms. Rios' bank statements and certain expense categories demonstrated, Ms. Rios spent considerably more in expenses during 2016 than either her budget or the IRS National guidelines suggest.[14] In fact, Ms. Rios' spending on these expense categories spiked upward *after* the trustee filed her motion for turnover.

Ms. Rios stated that she has ongoing health problems, including diabetes, fibromyalgia, asthma, and back and hip complaints. These apparently led to work absence issues that may have caused her termination at Westar after many years' employment there. At the time of the hearing, Ms. Rios had resumed working, now

---

[13] Trial Ex. L.
[14] Trial Ex. U.

**5**

for the City of Wichita, but was on probationary status in that job and earned less than in her Westar job.

The terms of the confirmation order affirmatively prohibited Ms. Rios from disposing of any estate asset without the trustee's permission or the court's order.[15] The unsecured creditors' claims in this case total $7,046. By the time the trustee filed a written motion for turnover in late April of 2016, Ms. Rios had spent most of the settlement money.[16] Her response to the turnover motion was the filing of this voluntary motion to dismiss under § 1307(b). She ceased making plan payments.[17] The debtor was also prohibited from incurring additional debt during the plan term, yet it is clear that Ms. Rios continued to accrue, but not pay, additional post-petition income taxes.[18] At the time of her October hearing, Ms. Rios was in the 41st month of her 60-month chapter 13 plan and had a plan payment delinquency of about $1,500.[19] Rather than modifying her plan to pay some portion of the settlement to her creditors, she now seeks to dismiss her case.

Analysis

The post-petition settlement funds were property of Ms. Rios's bankruptcy estate.[20] The order confirming her plan placed strict limitations on her ability to unilaterally dispose of them.[21] Notwithstanding her counsel's statement that "she

---

[15] Trial Ex. D, p. 2.
[16] Trial Ex. G.
[17] Doc. 41.
[18] Trial Ex. D, p. 2.
[19] Trial Ex. M.
[20] 11 U.S.C. § 1306(a).
[21] Trial Ex. D, p. 2.

**6**

didn't do anything wrong," Ms. Rios did in fact violate the express terms of the confirmation order when she spent the money. She also misrepresented in the settlement agreement that she was not in a pending bankruptcy. Had Westar Energy known that Ms. Rios was still in bankruptcy, it would have likely paid the settlement over to her case trustee or jointly to her and the trustee.

Ms. Rios undoubtedly has the right to have her chapter 13 case dismissed under § 1307(b).[22] But upon an appropriate showing of "cause," the Court may attach conditions to that dismissal under § 349(a), including excepting her current debts from discharge in a future case.[23] In *In re Frieouf,* the Tenth Circuit Court of Appeals applied a plain language reading of § 349(a) and held that the bankruptcy court could permanently disqualify a class of debts from discharge.[24] To establish "cause" under § 349(a), a party in interest must demonstrate that the debtor's bad faith conduct was prejudicial to creditors.[25] While serial bankruptcy filings may not constitute bad faith *per se*, a debtor's history of filings and dismissals may be evidence of bad faith.[26] In short, bad faith conduct that is prejudicial to creditors may be established where the

---

[22] 11 U.S.C. § 1307(b) provides that a chapter 13 case "shall" be dismissed upon debtor's request, if the case has not been converted from another chapter. *See In re Mills,* 539 B.R. 879, 884-86 (Bankr. D. Kan. 2015) (chapter 13 debtor's right to dismissal was absolute, even where creditor's motion to convert on basis of bad faith was pending), following *Barbieri v. RAJ Acquisition Corp. (In re Barbieri),* 199 F.3d 616 (2nd Cir. 1999).
[23] 11 U.S.C. § 349(a).
[24] *Frieouf v. United States (In re Frieouf).* 938 F.2d 1099, 1103 (10th Cir. 1991), *cert denied* 502 U.S. 1091 (1992).
[25] *Hall v. Vance,* 887 F.2d 1041, 1045 (10th Cir. 1989) (mere tardiness is not bad faith).
[26] *See In re Norton,* 319 B.R. 671 (Bankr. D. Utah 2005) (barring debts from future discharge where debtor filed 9 unsuccessful chapter 13 cases in 8 years).

7

debtor abuses the bankruptcy process or undermines the integrity of the bankruptcy system.[27]

Ms. Rios was straightforward in disclosing her intention to file another chapter 13 (her sixth case) and, indeed, she has lots of motivation. She cannot get a discharge in this case even if she completes her plan because she filed it within only 18 months of receiving a chapter 7 discharge in 2011.[28] As her prior cases, Ms. Rios said that she filed this case to deal with her back taxes from 2009 on, taxes that neither the 2011 chapter 7 nor her 2012 chapter 13 remedied. Were she to file a new chapter 13, she would be eligible for a discharge now that her chapter 7 discharge is nearly five years in the past.[29] If she received a discharge, it would be her fourth since 2002.

To be sure, excepting Ms. Rios's present debts for future discharge is a draconian remedy.[30] But on these facts, what else can the Court do? For whatever reason, Ms. Rios's five prior cases here have not solved her debt or tax problems. She

---

[27] *In re Brown,* 319 B.R. 691, 693 (Bankr. M.D. Ala. 2005), citing *In re Merrill,* 192 B.R. 245, 247 (Bankr. D. Colo. 1995). *See also In re Tomlin,* 105 F.3d 933, 937 (4th Cir. 1997) (section 349(a) may remedy egregious debtor misconduct, directly related to the bankruptcy case, which prejudices creditors or undermines the integrity of bankruptcy system); *In re Hall,* 258 B.R. 908, 912 (Bankr. N.D. Ind. 2001) (misconduct that undermines the integrity of the bankruptcy system may warrant dismissal with prejudice.)
[28] *See* 11 U.S.C.§1328(f)(1) (ineligible for discharge if debtor received a chapter 7 discharge within 4 years)
[29] *See In re Hieter,* 414 B.R. 665, 674 (Bankr. D. Idaho Mar. 13, 2009) (dismissal with bar to refile where current chapter 13 case was filed six days after dismissal of prior chapter 13 case; serial filings were intended to evade § 1328(f) limitations and buy time while 4-year bar to discharge passed and be protected by automatic stay).
[30] *Hall v. Vance,* 887 F.2d 1041, 1045 (describing dismissal with prejudice as a severe sanction that should be invoked infrequently).

8

is chronically unable to pay her taxes, incurring more while in her 2005 chapter 13, her 2011 chapter 7, her failed 2012 chapter 13, and now in this case. She is in payment default of her plan despite having received nearly $25,000 cash in January of this year. She spent that money in violation of the confirmation order, spending well outside her budget and the IRS National guidelines. While I would likely have approved her request to purchase a newer car and to use some of her settlement to replace lost income, and while Ms. Rios did make a lump sum $1,000 plan payment shortly after getting the money, I cannot turn a blind eye toward her disposition of the rest of the settlement proceeds to the prejudice of her unsecured creditors without undermining this Court's authority and threatening the integrity of the bankruptcy process. Securing Chapter 13 protection involves making a bargain. In exchange for receiving a respite from creditors' collectors, debtors agree to devote their disposable income to paying those creditors something from their income. That bargain is meaningless if the debtor is excused from accounting for property she accumulates post-petition.[31]

---

[31] *See In re Norton,* 319 B.R. 671 (Bankr. D. Utah 2005) (serial filer's defiant and abusive behavior warranted permanent bar of debts from future discharge); *In re Garcia,* 479 B.R. 488 (Bankr. N.D. Ind. 2012) (unauthorized use of estate property by violating cash collateral orders and rent collection orders); *In re Flory,* No. 10-10748, 2012 WL 627670 (Bankr. D. Vt. Feb. 24, 2012) (dismissal with prejudice where debtor violated confirmation order by failing to report and turn over funds obtained by inheritance and depleted funds in probate account); *In re Guebert,* No. 07-41165, 2008 WL 1744777 (Bankr. D. Kan. Apr. 11, 2008) (serial filer of 15 cases over 20 years evidenced a scheme to manipulate and misuse bankruptcy process and delay or hinder two creditors from collecting debts; case dismissed with prejudice as to debts owed to two creditors).

Ms. Rios' misconduct in this case is similar to the debtor's in *In re Smith*.[32] There, the debtor, also a repeat bankruptcy filer, received and spent a $22,000 post-petition workers' compensation settlement in violation of his confirmed plan requiring turnover over the funds to the trustee for distribution to creditors. The bankruptcy court found that the confirmed plan was "clear enough" – proceeds from debtor's workmen's compensation claim were committed to the plan. Instead, debtor converted property of the estate for his personal use. The court concluded that this was "an egregious abuse of the protections of the Bankruptcy Code."[33] Given that debtor had "been to the rodeo before," having filed two prior chapter 7 cases and received discharges in both, he was expected to be more knowledgeable of his obligations.[34] The court dismissed debtor's case with prejudice, barring discharge of his debts in a future case *and* imposed a five-year injunction against debtor's refiling bankruptcy under any chapter. Barring the future discharge of Ms. Rios's debts is the only sanction left to me.[35]

Conclusion

I must grant Ms. Rios's motion to voluntarily dismiss under § 1307(b), but I find there is cause under § 349(a) to except from any future discharge all scheduled

---

[32] 536 B.R. 478 (Bankr. M.D. Ala. 2015).
[33] *Id.* at 481.
[34] *Id.* at 481-82.
[35] Bans on refiling for more than 180 days are not available to bankruptcy courts in the Tenth Circuit, *see In re Frieouf,* 938 F.2d 1099, 1103 (10th Cir. 1991) (Courts lack power under § 349(a) to add time to the statutory 180 day filing ban described in § 109(g)).

**10**

debts in this case as well as any other debt that is the basis for a claim that has been allowed in this case. The case is dismissed with prejudice. Because of the grave consequences of that finding, this order is stayed for 21 days from its entry to allow Ms. Rios to consider whether she wishes to modify her plan in this case in an effort to repay her creditors.

###